STATE v. J. C. FREEMAN.

(Filed 15 November, 1916.)

**1. Criminal Law—Bills and Notes—No Funds—Statutes—Value.**

A check for $107, given to the carrier to pay freight charges for the
transportation of goods, accepted by it as cash, followed by the delivery
of the goods, is for value, within the meaning of Revisal (Pell's), 3434b,
making it a misdemeanor for a person to obtain money, etc., or anything
else of value by means of a check upon any bank, etc., when it is not
indebted to the drawer, etc.

**2. Courts—Recorders' Courts—Misdemeanor—Jurisdiction—Statutes.**

Pell's Revisal, sec. 3434b, makes it a misdemeanor, and not a felony,
for one to draw a check, etc., upon a bank, etc., without funds there,
etc., punishable by fine or imprisonment or both, in the discretion of the
court; and the offense is cognizable in the recorder's court of the district
of Denton, Davidson County. *S. v. Hyman,* 164 N. C., 411, where the
statutory offense was a common-law felony, and by the terms of the
statute punishable by imprisonment in the State Prison, cited and dis-
tinguished.

**3. Indictments—Criminal Law—Offense—Judgments—Motions to Quash.**

Where the warrant sufficiently charges a criminal offense created by
statute, and informs the defendant of the offense with which he is
charged, a motion in arrest of judgment is properly denied.

WALKER, J., dissents.

ACTION commenced upon warrant in the recorder's court of the district of Denton, DAVIDSON County. The defendant was convicted, and appealed to the Superior Court and tried at February Term, 1916, *Cline, J.,* presiding. The defendant was convicted and sentenced, and appeals to the Supreme Court.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Dallas Zollicoffer, Jerome & Jerome for defendant.*

BROWN, J. The defendant was charged with giving a check for $107.06 on the Bank of Cape Fear, N. C., knowing that he had no funds in said bank. The statute creating the offense reads as follows: "If any person, with intent to cheat and defraud another, shall obtain money, credit, goods, wares, or anything else of value by means of a check, draft, or order of any kind upon any bank, person, firm, or corporation not indebted to drawer, or where he has not provided for the payment or acceptance, and the same be not paid upon presentation, he shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned, or both, at the discretion of the court." Pell's Revisal, sec. 3434b.

In apt time the defendant made a motion to nonsuit upon the ground that the evidence did not show that he obtained anything of value within the purport of the statute. The testimony tends to prove that the check was given to pay freight on a car-load of lumber, which freight amounted to $107.06; that the check was taken as cash and the car-load of lumber turned over to him.

We are of opinion this is substantially a thing of value within the meaning of the statute. Defendant moved to dismiss the warrant for the reason that the recorder's court had no jurisdiction, and that the Superior Court could only acquire jurisdiction by bill of indictment. The offense as defined by the statute is a misdemeanor and punishable by fine or imprisonment, or both, at the discretion of the court.

The case is distinguished from that of *S. v. Hyman,* 164 N. C., 411, which was a charge of perjury. In that case the Court pointed out that though the statute styled the offense a misdemeanor, yet at common law it was a felony, and the statute itself made it punishable by imprisonment in the State Prison, and, therefore, having the actual grade of a felony, though called a misdemeanor, it was held that an offense under the statute could only be prosecuted by an indictment found by a grand jury. The case is within the rulings in the following cases: *S. v. Dunlap,* 159 N. C., 491; *S. v. Shine,* 149 N. C., 480; *S. v. Jones,* 145 N. C., 460; *S. v. Lytle,* 138 N. C., 738.

STATE *v.* FREEMAN.

The motion in arrest of judgment was properly denied. We think the warrant sufficiently charges the offense created by the statute and also informs the defendant of the offense with which he is charged.

No error.

WALKER, J., dissenting: The proceeding should have been dismissed on the motion of the defendant, as the original court had no jurisdiction and the Superior Court, therefore, acquired none derivatively. The only way in which the latter court could get jurisdiction of the case was by indictment of the grand jury in accordance with the express mandate of the Constitution protecting the citizen against prosecution for any criminal offense except a petty misdemeanor, save by presentment or indictment. The crime with which defendant was charged is not such a misdemeanor, but has on the contrary, a very felonious flavor. It is not called a false pretense in the statute, but it is one in reality, as the statutory definition of it contains every element of the offense known as false pretense, or cheating by false tokens. It is "the obtaining of money, credit, goods, wares, or anything of value with intent to cheat and defraud another, by means of a false check, draft, or order of any kind on a bank." In other words, the giving of a check drawn on a bank where the drawee has no funds with which to pay it, and thereby receiving for it something of value. This is, in substance and effect, though not formally, by the law, a false pretense. It is just as heinous in quality as cheating by any other false token or pretense. The statute is merely a slight extension of the common law, as will appear by the following history of the crime of "false pretense" as given by an able and scholarly text-writer (Professor Mikell): The crime of cheating was not very clearly defined in the early common law, the term "cheating" being applied to the defrauding, and even to the attempt to defraud, by means of any artful device whatever. Subsequently cheats were divided into two classes: first, those affecting the Government, and, second, those affecting individuals. In the former class of cases the use of any fraudulent device was sufficient to constitute the crime. In the latter class of cases a false token was necessary. In modern times cases belonging to the first of these classes, while still indictable, have ceased to be denominated cheats, and that term is now restricted to cheats by false tokens. A cheat at common law may be defined as the defrauding of any person by means of a false symbol or token, such as, when not false, is commonly accepted by the public for what it purports to represent. A measure is such a token; therefore, to sell a commodity by a false measure is an indictable cheat. General trade-marks having

a definite meaning in the trade are also such tokens, and the use of a false trade-mark to defraud a buyer is indictable. Since bank-notes pass current, the passing of a false bank-note is a cheat, but the passing of a false promissory note of an individual is not, whether it purports to be the note of the person passing it or of another. Since no mere words amount to a token, drawing a check on a bank in which one has no funds, this being but a written promise or statement, is not a cheat at common law. By 33 Hen. VIII., ch. 1, it was made a penal offense for any person falsely and deceitfully to obtain money or goods in another man's name by color and means of a counterfeit letter or false privy token. This statute is a part of the common law of those of the United States that have adopted the common law of England; but since most of the States early adopted broader statutes against frauds by false pretenses, there are few decisions on the English statute. Under 33 Hen. VIII., ch. 1, and similar statutes, a false token of some kind was still necessary to constitute cheating, and a fraud perpetrated by mere false words alone was a civil injury only and not indictable. The statute of 30 Geo. II., ch. 24, sec. 1, created the crime of obtaining property by false pretenses. It provided that all persons who knowingly and designedly by false pretenses should obtain from any person money or goods with intent to cheat or defraud any person of the same should be deemed offenders against law, etc. Its provisions were extended so as to include the obtaining of choses in action as well as other property by the statute of 52 Geo. III., ch. 64, sec. 1. Most of the American statutes are modeled on these two English statutes. However, the legislatures of many States have added provisions or enacted additional statutes extending the crime to many analogous frauds of various kinds. In a few States, on the other hand, the legislatures have adopted statutes more restricted than the English statutes in their operation, and some have abolished the crime eo nomine and assimilated the offense to the crime of larceny, while others have included it under the broader offense of swindling. 19 Cyc., 383 to 393; Mikell Cases Cr. L., 275. The usual definition of a false pretense will show that the statute upon which this indictment was drawn contains every element, at least in a moral sense: "To constitute the crime of obtaining property by false pretense there must be: (1) a false pretense; (2) by defendant or some one instigated by him; (3) knowledge of defendant of its falsity; (4) a reliance on the pretense by the person defrauded; (5) an obtaining of the property by defendant or some one in his behalf; (6) an intent in defendant to defraud; and (7) an actual defrauding." 19 Cyc., 393. Cheating by false tokens or pretense was regarded in the Roman law as analogous to the crimen falsi. Stephen Hist. of Cr. Law, 21, 22; 19 Cyc., 386. Other false pretenses:

are made felonies by our statute and punished by imprisonment in the State penitentiary not less than four or more than ten years. Pell's Revisal, sec. 3432. While the commission of the offense alleged in this bill is punishable simply "by fine or imprisonment, or both," all the offenses of a like kind are placed in the same general category and even associated in the same chapter of the Revisal as being of the infamous kind. Is cheating by a false and deceitful check any less corrupt or infamous in degree than other cheats, or even than larceny? The element of asportation is the only one that distinguishes the latter from the former. The *mala mens* is the same in both. This being the history of the crime of false pretense, how can we say that it should be dealt with as a petty misdemeanor? It was not so at common law. The punishment, even by imprisonment, is quite as infamous, under our present system, as confinement in the State's Prison. The defendant can be assigned to hard labor on the roads and made to wear stripes. He works in public, where he may be seen of all men, and, perhaps, under a hard and cruel taskmaster. If he happens to be a man of any sense of shame, who has fallen upon evil ways, and who, in his extremity caused by misfortune and poverty, was sorely tempted to get money dishonestly, by a false check, the punishment would surely be as humiliating and as disgraceful to him as the other, and perhaps far more so, and would be equally as severe, harsh, and rigorous. I do not think the framers of the Constitution intended any such meaning when they provided for the trial of petty misdemeanors with the right of appeal. They were referring to such small misdemeanors as would be within the jurisdiction of justices of the peace, where there was no jury—the right of appeal, where a jury could be had in the higher court, being considered a sufficient equivalent. It should be noted that the statute in this case provides a punishment beyond a justice's jurisdiction, as the defendant may be both fined and imprisoned. It would, in my opinion, constitute a dangerous precedent, and one greatly liable to abuse and oppression, to hold that a citizen can be tried without indictment or a jury for an offense punished infamously, and merely because it is called a misdemeanor. When the citizen may lose his liberty and be subjected to infamous and debasing punishment, then, if ever, the rights guaranteed by the Constitution should be carefully safeguarded and preserved to him, without any regard to the mere name of the offense with which he is charged. The law looks to the substance and not to the shadow. If his rights are essentially threatened the Constitution protects him. In *S. v. Dunlap,* 159 N. C., 491, and *S. v. Hyman,* 164 N. C., 411, I dissented from the principle decided, though my opinion, filed in one of the cases, was not in the form of a dissent, as the defendant was otherwise relieved from

the judgment. I have expressed my views somewhat more fully in this case, as, the point being squarely presented, they take the form of a dissent. As it is the last time that I may formally enter my dissent in such cases, I here repeat what I said in the *Dunlap case, supra,* as expressive of my views then and now: "It must not be understood that I assent to the doctrine that the Legislature, under the article of our Constitution providing for the trial of petty misdemeanors, without a jury, but with the right of appeal, has the arbitrary right to declare what offenses shall be petty misdemeanors, so as to confer jurisdiction to try and condemn to infamous punishment without a presentment or indictment by a grand jury and a trial by a petit jury. What difference does it make that we call it a petty misdemeanor, when the crime is punished, upon conviction, with hard labor and with stripes—in other words, infamously and as a felony? It seems to me that it is calling a thing by the wrong name, and is violative not only of the letter and spirit of the Constitution, but of the sacred rights of the citizen as guaranteed by that instrument, and which guaranty existed long before it was adopted. By the use of the term 'petty misdemeanor' was meant such offenses as were known in the law by that name at the time the Constitution was ratified, or offenses of a similar grade. I am not attempting to overthrow the decisions of this Court by argument or precedent—for if that was my purpose, I would proceed in a different way—but merely to enter my earnest dissent to the principle, so often announced, as subversive of the rights and liberty of the citizen, and especially of the consecrated right of trial by jury. If you can, by legislative enactment, make larceny a petty misdemeanor, why not manslaughter, perjury, and other offenses of a higher grade of criminality? But we have often decided that this can be done— that is, that certain offenses which are punished infamously, by hard labor and involuntary servitude, and in a way far more degrading than corporal punishment, can be declared petty misdemeanors. This misdemeanant is sent to the roads, and by the same kind of reasoning he may be sent to the penitentiary, because, at last, it all depends upon the legislative will as to what offenses shall be felonies and what misdemeanors. I think we should retrace our steps and decide the question according to the plain meaning of the Constitution; but until this is done, I must abide by the precedents," 159 N. C., 493, 494.

The punishment of the crime with which the defendant is charged herein, by any other name, such as "felony," would be none the less severe, bitter, and degrading. It is not, therefore, "petty," which means "little, trifling, inconsiderable," but very grave and fraught with serious consequences to the culprit

Until the Court does retrace its steps I shall silently abide by the precedents in this Court, and I would not have prepared this opinion had it not been for the importance and gravity of the question involved.

JUSTICE ALLEN concurs in this opinion.